UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TANYA LYNN P.,
    *Plaintiff*,

v.

KILOLO KIJAKAZI, *Acting Commissioner,*
*Social Security Administration,*
    *Defendant.*

No. 3:20-cv-1554 (JAM)

**ORDER GRANTING MOTION TO AFFIRM THE
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

    Plaintiff has long suffered from several mental impairments, which were exacerbated when her ex-husband abandoned her in late 2015. She claims that she is disabled because of these impairments. Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, who denied her claims for Title II social security disability insurance and Title XVI supplemental security income benefits. Plaintiff has filed a motion to reverse the decision of the Commissioner, and the Commissioner has filed a motion to affirm his judgment.[1] For the reasons discussed below, I will grant the Commissioner's motion to affirm and deny the motion to reverse.

**BACKGROUND**

    The following facts are taken from the transcripts provided by the Commissioner.[2] Plaintiff's most recent long-term employment was as a cosmetologist in South Carolina. She owned and operated a salon and spa there between 1988 and 2010, when she stopped working to

---

[1] Doc. #16 (motion to reverse), Doc #18 (motion to affirm).

[2] *See* Docs. #14 (transcripts), #15-1 (text-searchable version). Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. ##).

care for her young daughter.[3]

Plaintiff was last insured for disability insurance benefits in December 2015.[4] She applied for disability and supplemental security income benefits in March 2018, alleging that her disability began in December 2010.[5] Her claims were initially denied in June 2018, and denied again upon reconsideration in August 2018.[6] Plaintiff then requested a hearing to present further evidence of her disability.[7]

Plaintiff appeared and testified before an Administrative Law Judge (ALJ) on July 24, 2019.[8] Plaintiff was represented by counsel, who amended the alleged onset date of her disability to December 2015—the month following her ex-husband's abandonment of her and their daughter, who was then eight years old.[9]

On September 30, 2019, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social Security Act.[10] The ALJ concluded that plaintiff had the residual functional capacity to perform three jobs with significant numbers in the national economy.[11] On August 11, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision.[12] Plaintiff then timely filed this federal action seeking review of the ALJ's

---

[3] Doc. #15-1 at 43-44, 251, 277 (Tr. 36-37, 248, 274).

[4] *Id*. at 246 (Tr. 243).

[5] *Id*. at 15 (Tr. 12, ALJ decision); 221 (Tr. 218, application for disability insurance); 228 (Tr. 225, application for supplemental security income).

[6] *Id*. at 15 (Tr. 12).

[7] *Ibid*.

[8] *Ibid*.; *see also id*. at 33-78 (Tr. 30-75, hearing transcript).

[9] *Id*. at 16, 51 (Tr. 13, 48).

[10] *Id*. at 28 (Tr. 25).

[11] *Id*. at 27-28 (Tr. 24-25).

[12] *Id*. at 4-9 (Tr. 1-6).

decision.[13]

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. § 423(d)(1)(A), (2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [claimant] [is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a)-(b), 416.966(a)-(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

The agency engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[13] Doc. #1 (complaint).

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that plaintiff had not engaged in substantial gainful activity since December 31, 2015, the alleged onset date.[14] At Step Two, the ALJ concluded that plaintiff suffered from the following severe impairments: ADHD, post-traumatic stress disorder, depression, and personality disorder.[15]

At Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[16] In particular, the ALJ found persuasive the opinions of two state agency consultants, Dr. Hedy Augenbraun and Dr. Robert Decarli, who defined plaintiff's limitations as mild to moderate but not severe.[17] The ALJ found that these opinions were supported with detailed explanations of the relevant clinical evidence and consistent with other evidence indicating that plaintiff suffered from various mood and

---

[14] *Id*. at 18 (Tr. 15).

[15] *Ibid*.

[16] *Id*. at 18-20 (Tr. 15-17).

[17] *Id*. at 19 (Tr. 16).

concentration problems but was able to perform basic tasks for herself and others.[18]

The ALJ then found that plaintiff had a residual functional capacity (RFC) to perform a full range of work at all exertional levels, though she could only "perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work-place changes."[19] The ALJ further found that plaintiff could not be subject to time or production requirements, could work in a non-public setting on individual rather than collaborative tasks, and could have only occasional interactions with coworkers and supervisors.[20] The ALJ reached this conclusion on the basis of a detailed review of plaintiff's mental health treatment notes from March 2017 through June 2018.[21]

The ALJ also noted that plaintiff's mental health treatment under psychiatrist Dr. Larry Nelson dated back to 2000, focusing before December 2015 on her issues with attention deficit disorder, depression and panic attacks.[22] In evaluating this history, the ALJ again found persuasive the views of Dr. Augenbraun and Dr. Decarli regarding plaintiff's residual ability to understand, remember and carry out simple tasks with adequate concentration, persistence and pace for two-hour periods with limited interpersonal contact and no time pressure.[23] By contrast, the ALJ found unpersuasive the view of Dr. Karen Goldfinger that plaintiff would have difficulty concentrating and persisting in tasks due to workplace stress.[24]

---

[18] *Ibid.*

[19] *Id.* at 20 (Tr. 17).

[20] *Ibid.*

[21] *Id.* at 21-23 (Tr. 18-20).

[22] *Id.* at 24 (Tr. 21).

[23] *Ibid.* The ALJ did, however, reject Dr. Augenbraum's view that there was insufficient evidence as of the date last insured to evaluate plaintiff's case in light of plaintiff's extensive and well-documented history of mental health treatment. *Ibid.*

[24] *Id.* at 25 (Tr. 22).

At Step Four, the ALJ determined that plaintiff lacked any past relevant work because her position as a cosmetologist did not constitute substantial gainful activity.[25] At Step Five, the ALJ relied on the testimony of the vocational expert who opined that a person of plaintiff's age (46 on the alleged disability onset date), education (at least high school), work background, and residual functional capacity could perform the requirements of a vehicle cleaner, salvage laborer, and cleaner, positions which combined represented around 590,000 jobs nationally.[26] The ALJ ultimately concluded that plaintiff was not disabled within the meaning of the Social Security Act.

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Plaintiff makes three claims of error. *First*, plaintiff argues that the ALJ failed to develop a complete mental health record going back to the 12-month period prior to the month she was

---

[25] *Ibid*.

[26] *Id*. at 27-28 (Tr. 24-25).

last insured for disability insurance benefits.[27] *Second*, plaintiff argues that because the ALJ did not evaluate medical evidence prior to March 2017, she overlooked a 2011 statement from Dr. Nelson that plaintiff was "certainly totally disabled at this point" and a 2015 statement that she had persistent daily body pain.[28] Relatedly, plaintiff faults the ALJ for failing to meaningfully analyze her panic disorder or anxiety at Step Two.[29] *Third*, plaintiff contends that the ALJ did not sufficiently evaluate the various medical opinions in light of the full longitudinal record, and gave undue deference to the opinions of Dr. Augenbraun and Dr. Decarli despite the fact that neither opinion was based on evidence in her mental health record prior to March 2017.[30]

I will consider each of plaintiff's arguments in turn.

### *Adequacy of the administrative record*

Plaintiff claims that the ALJ did not adequately develop the record of her medical and mental health during the 12-month period between December 2014 and December 2015.[31] She specifically objects that the ALJ did not request three sets of records: (1) psychiatric evaluations from Dr. Nelson dating back to 1993; (2) her 2016 visit to the emergency room at Backus Hospital in Norwich for a medication refill; and (3) counseling reports from United Community and Family Services (UCFS) beginning in 2016.[32] Plaintiff says that this violated 20 C.F.R. § 404.1512(b)(ii), which states that, where applicable, the Commissioner will "develop [a]

---

[27] Doc. #16-1 at 4-5.

[28] *Id*. at 5-7.

[29] *Id*. at 6.

[30] *Id*. at 8-9.

[31] *Id*. at 4-5.

[32] *Id*. at 5. Plaintiff visited UCFS for counseling and medication to treat her depression and post-traumatic stress disorder. Doc. #15-1 at 254 (Tr. 251). She visited the emergency room at Backus Hospital in late 2016 because she ran out of Xanax and had not yet seen UCFS. *Id*. at 255 (Tr. 252).

complete medical history for the 12-month period prior the month [the claimant was] last insured for disability insurance benefits."

It is well established that "[t]he ALJ, unlike a judge in a trial, must [herself] affirmatively develop the record" in light of "the essentially non-adversarial nature of the benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ has a duty "to investigate and develop the facts and develop arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). But the duty to develop the record is not limitless. An ALJ has no duty to develop a history unless there are "obvious gaps or inconsistencies" in the record. *See O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014).

Here, the ALJ adequately developed the record with respect to Dr. Nelson's psychiatric treatment. A full 81 pages of the record are dedicated to plaintiff's treatment at Carolina Psychiatric Services under Dr. Nelson's care between December 2000 and June 2016.[33] While the ALJ did not exhaustively chronicle each of plaintiff's visits with her psychiatrist, she took note of plaintiff's "longstanding history of mental health issues" and the fact that she "started attending mental health treatment at the age of 26 due to anxiety."[34] She also observed the "medical evidence of record" including plaintiff's "mental health treatment notes [that] date back to 2000."[35] Most importantly, the ALJ found that plaintiff's underlying health issues of attention deficit disorder, depression and panic, for which she was treated by Dr. Nelson with psychiatric medications, "worsened once her daughter's father left the family," causing her to experience

---

[33] *Id*. at 567-647 (Tr. 564-644).

[34] *Id*. at 21 (Tr. 18).

[35] *Id*. at 24 (Tr. 21).

"racing thoughts, anxiety, problems concentrating, depression, feeling overwhelmed and problems being around people."[36] There was therefore no reversible error with respect to the ALJ's development of the record on plaintiff's mental health treatment under Dr. Nelson.

With respect to plaintiff's visits to Backus Hospital and UCFS in 2016, there was no need for record development on those points because they shed minimal light on the severity of plaintiff's impairment and occurred outside the window of time relevant to evaluating plaintiff's claims. To be entitled to disability insurance benefits, plaintiff had to show that she was disabled *before* her insured status expired in December 2015. *See* 20 C.F.R. § 404.130. Plaintiff's counseling visits and medication refills in late 2016 are irrelevant to the question of whether her mental impairments constituted a disability under Title II in late 2015. Similarly, to show that she was entitled to supplemental security income under Title XVI, plaintiff had to show she was disabled while her application was pending—that is, beginning no earlier than the filing of her claim for supplemental security income benefits in March 2018.[37] *See* 20 C.F.R. §§ 416.330, 416.335. Plaintiff's counseling and medication-related visits to Backus Hospital and UCFS in late 2016 do not shed significant light on whether her mental impairments were so severe as to constitute a disability in early 2018. The ALJ therefore did not err in deciding plaintiff's claim without further development of the record.

### *Evaluation of medical records*

Plaintiff argues that the ALJ failed to meaningfully engage with Dr. Nelson's treatment notes spanning 16 years and over 80 pages of record material.[38] In particular, plaintiff points to a

---

[36] *Id*. at 21, 24 (Tr. 18, 21).

[37] *Id*. at 228 (Tr. 225, application for supplemental security income).

[38] Doc. 16-1 at 6-7.

2011 note from Dr. Nelson that she was "certainly totally disabled at this point" and a 2015 note that she had persistent daily body pain.[39] Plaintiff also says the ALJ failed to analyze her diagnosed panic disorder as a severe impairment at Step Two.[40]

In assessing a disability claimant's residual functional capacity, the ALJ must consider all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ has the discretion to resolve "genuine conflicts" in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). And the ALJ is entitled to make an RFC finding that is consistent with the medical record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

The ALJ did not specifically discuss Dr. Nelson's finding that plaintiff was "certainly totally disabled" in February 2011 or that she had persistent daily body pain in August 2015. As described above, however, the ALJ canvassed plaintiff's mental health treatment under Dr. Nelson's care and drew conclusions about the timeline of plaintiff's mental health based on that history. I find no error in the ALJ's decision not to specifically discuss Dr. Nelson's indication that plaintiff was experiencing bodily pain in light of plaintiff's statement in her disability form that her condition did not "cause [her] pain or other symptoms," and Dr. Andrias's similar indication that plaintiff's psychiatric condition did not "exacerbate [her] experience of pain or any other physical symptom."[41] Indeed, plaintiff did not claim any physical disability before the ALJ. The ALJ therefore did not err by omitting discussion of Dr. Nelson's report on her bodily pain.

---

[39] *Id*. at 5-7. The relevant notes appear in the record, Doc. #15-1, at 588 (Tr. 585) and 638 (Tr. 635).

[40] Doc. #16-1 at 6-7.

[41] Doc. #15-1 at 250, 656 (Tr. 247, 653).

In contrast, Dr. Nelson's finding that plaintiff was "totally disabled" in early 2011 did merit some degree of consideration, as it bears directly on the disability determination at issue. Nonetheless, the ALJ had no obligation to explain why this particular piece of evidence was insufficient to support a conclusion of disability, "so long as the record permits [me] to glean the rationale of [the] ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Two reasons for giving this conclusion limited weight are apparent from the face of the record. First, Dr. Nelson's evaluation took place several years before plaintiff claimed her disability began in December 2015. Second, Dr. Nelson specified that plaintiff was disabled "at this point" without saying more—and he never made a similar finding thereafter.[42] To be considered a disability under Title II, an impairment must last or be expected to last for "a continuous period of not less than 12 months." *Robinson*, 781 F.3d at 45 (quoting 42 U.S.C. § 423(d)(1)(A)). The ALJ therefore did not err in evaluating plaintiff's mental health history without specifically addressing this comment by Dr. Nelson.

Finally, there was no error in the ALJ's treatment of plaintiff's panic disorder at Step 2. The ALJ recognized that plaintiff had received treatment for chronic panic attacks, including prior to December 2015.[43] Plaintiff testified at the hearing that, as of 2019, she continued to experience anxiety but not full-blown panic attacks.[44] There was no need for the ALJ to classify panic attacks or anxiety as severe impairments at Step 2, and the ALJ otherwise adequately

---

[42] *Id*. at 588 (Tr. 585).

[43] Doc. #15-1 at 24 (Tr. 21).

[44] *Id*. at 47 (Tr. 44).

considered plaintiff's anxiety alongside her other mental impairments in determining that she was not disabled.

### *Weight of opinion evidence*

Plaintiff disputes the weight given to various opinions by the ALJ. In particular, plaintiff objects to the ALJ's reliance on the views of Dr. Augenbraun and Dr. Decarli, because these doctors did not have the opportunity to review her full mental health records from Dr. Nelson.[45] But as explained above, the ALJ independently assessed the weight of those records, and in any event that history was not a prerequisite for Dr. Augenbraun and Dr. Decarli to conclude that plaintiff retained specific levels of residual functional capacity when they assessed her in 2018.

Nor did the ALJ err, as plaintiff contends, in rejecting Dr. Goldfinger's view that plaintiff would have difficulty concentrating and persisting in tasks due to workplace stress.[46] The ALJ did not have to explicitly assess this opinion in light of the full longitudinal record from Dr. Nelson; it sufficed to note, as the ALJ did, that Dr. Goldfinger's opinion was not persuasive because it was based primarily on plaintiff's subjective reporting and expressed in vague terms that did not provide a function-by-function analysis of plaintiff's mental work-related limitations.[47] Both observations are true. Dr. Goldfinger's report is but three pages long, and consists of statements plaintiff made during an interview, Dr. Goldfinger's observations of her during that interview, and a three-paragraph summary and response to the referral questions.[48] It

---

[45] Doc. #16-1 at 8.

[46] Doc. #15-1 at 25 (Tr. 22).

[47] *Ibid*. The ALJ similarly rejected the views of plaintiff's therapist Katie Andrias and nurse practitioner Gina Higgins that she would have to miss work about two days per month and could work on a part-time basis only, because these conclusions were contradicted by Andrias's and Higgins's own assessments and other record evidence of plaintiff's ability to perform a wide range of sustained activities. *Id*. at 26 (Tr. 23). Plaintiff has not challenged this conclusion on appeal.

[48] *Id*. at 561-63 (Tr. 558-60).

was appropriate for the ALJ to give little weight to these conclusions when weighing them against the full administrative record and the views of Dr. Augenbraun and Dr. Decarli.

Finally, the ALJ did not err in concluding that, while plaintiff is unable to work in a public setting or perform collaborative tasks, she can still "tolerate occasional interactions with coworkers and supervisors."[49] Plaintiff urges a contrary conclusion based on her history of troubled romantic relationships and associated stress.[50] But for the purposes of substantial evidence, there need only be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis*, 805 F.3d at 87. The ALJ reasonably inferred from plaintiff's "friendly demeanor and ability to maintain a relationship with her boyfriend and care for her daughter" that she would be able to manage incidental workplace interactions.[51]

## CONCLUSION

For the reasons set forth above, the Commissioner's motion to affirm (Doc. #18) is GRANTED, and plaintiff's motion to reverse (Doc. #16) is DENIED. The Clerk of Court shall close this case.

Dated at New Haven this 11th day of October 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[49] *Id*. at 25 (Tr. 22).

[50] Doc. #16-1 at 9.

[51] Doc. #15-1 at 19.